## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHIGAN FIRST CREDIT UNION,
on behalf of itself and all others
similarly situated,

                Plaintiff,

    v.

T-MOBILE USA, INC.,

                Defendant.

Case No. 2:22-cv-13159

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendant T-Mobile USA, Inc.

("T-Mobile") hereby removes this action to the United States District Court for the

Eastern District of Michigan pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441, 1446,

and 1453.

1.     On December 2, 2022, Plaintiff Michigan First Credit Union

("Plaintiff"), acting on its own behalf and purportedly on behalf of a putative class

of all others similarly situated, commenced an action in the Circuit Court for the

County of Wayne in the State of Michigan captioned *Michigan First Credit Union*

*v. T-Mobile USA, Inc.*, Case No. 22-014350-CB (the "State Court Action").

1

2.     On December 5, 2022, T-Mobile received process in the State Court Action by personal service to its authorized agent.

3.     A copy of all process, pleadings, and orders served upon T-Mobile are attached hereto:

   a.     A true and correct copy of the complaint in the State Court Action served upon T-Mobile (the "Complaint") is attached hereto as **Exhibit A**.

   b.     True and correct copies of the Summons and Verification of Business Court Eligibility and Notice of Assignment as served by Plaintiff in the State Court Action are attached hereto as **Exhibit B**.

4.     The State Court Action is removable to this Court because the Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332(d), and the Eastern District of Michigan encompasses the location in which the State Court Action is currently pending (i.e., Wayne County, Michigan).  *See* 28 U.S.C. § 1441(a).

## **Federal Question Jurisdiction, 28 U.S.C. § 1331**

5.     The Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 because federal questions permeate the claims at issue

here: at base, Plaintiff alleges that federal banking regulations led it to incur damages because of Defendant's purported violations of federal law.

6.    Federal question jurisdiction under Section 1331 exists "when the cause of action arises under federal law." *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020).  "A claim arises under federal law, for purposes of federal-question jurisdiction, when the cause of action … presents a substantial question of federal law," among other circumstances. *Id.* at 991; *see Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 377 F.3d 592, 596 (6th Cir. 2004), *aff'd*, 545 U.S. 308 (2005) (finding state law cause of action presented substantial question of federal law where federal statute "lies at the center of this dispute" and interpretation of federal law was necessary to resolve state law claim).

7.    Each of Plaintiff's claims against T-Mobile—(1) indemnification, (2) permanent injunction, and (3) contribution (Ex. A ¶¶ 53-68)—is premised on T-Mobile's purported violation of the Federal Communications Act ("FCA"), 47 U.S.C. § 151 *et seq.*, and present substantial questions of federal law (*id.* ¶¶ 2, 10, 28-29, 63-65).

8.    As alleged in the Complaint, Plaintiff seeks to represent financial institutions subject to Regulation E (12 C.F.R. Part 1005), a federal regulation promulgated under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* (Ex. A ¶ 1.)  Plaintiff alleges that Regulation E required it to reimburse customers

for certain unauthorized banking transactions, which Plaintiff says resulted from T-Mobile's alleged failure to comply with its obligations under the FCA by allowing third parties to effectuate fraudulent "SIM swap" transactions on customers' phone lines.  (*Id.* ¶¶ 2-3.)  Through this action, Plaintiff thus seeks to collect from T-Mobile amounts it paid under a federal regulation based on purported violations of federal law.  (*Id.* ¶ 7.)

9.     The Complaint rests on its allegation that T-Mobile violated its alleged duties under federal law, specifically alleged violations of 47 U.S.C. § 222(c) and 47 C.F.R. § 64.2010, by supposedly not taking reasonable measures to protect customer accounts.  (Ex. A ¶ 2.)  The central assertion of the Complaint is that these alleged FCA violations damaged Plaintiff and others: Plaintiff alleges "T-Mobile has … violated the FCA," "Michigan First and the Class have been damaged by … T-Mobile's failure to comply with the FCA," and "T-Mobile must be enjoined from committing further violations of the FCA."  (*Id.* ¶¶ 63-65.)

10.     Resolving Plaintiff's claims will necessarily require a court to interpret federal law, including without limitation questions like what type of data the FCA protects and what federally regulated entities like Defendant must do to protect that data and comply with the FCA.  These types of questions—the answers to which affect the scope and application of federal law—are quintessentially those that a federal court should consider in the first instance.  (Ex. A ¶ 21.)

11.    Plaintiff's purported entitlement to indemnification or contribution is also governed by federal law.  *See McDannold v. Star Bank, N.A.*, 261 F.3d 478, 485 (6th Cir. 2001) ("Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law.").

12.    In sum, the significant and disputed federal questions raised by Plaintiff's claims are more than enough to create subject matter jurisdiction under Section 1331.  *See, e.g.*, *Michigan v. Enbridge Energy, Ltd. P'ship*, 571 F. Supp. 3d 851, 858-59 (W.D. Mich. 2021) (finding state claims "necessarily raised" federal issues); *City of Detroit v. Comcast of Detroit, Inc.*, 771 F. Supp. 2d 781, 790 (E.D. Mich. 2011) (accord); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 U.S. Dist. LEXIS 68341, at *15 (D. Or. May 2, 2017) (finding state claims based on FCA claim raised federal question because "[t]his case is about an individual suing cable franchises and the municipalities that contract with them for violating the FCA").

13.    The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over any potentially unrelated state law claims because they derive from a common nucleus of operative facts as the claims raising disputed federal questions.

## Class Action Fairness Act, 28 U.S.C. § 1332(d)

14.     This Court also has original subject matter jurisdiction pursuant to the

Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

15.     Congress enacted CAFA "'to expand substantially federal court

jurisdiction over class actions' and directed that CAFA's 'provisions should be

read broadly, with a strong preference that interstate class actions should be heard

in a federal court if properly removed by any defendant.'"  *Graiser v. Visionworks*

*of Am., Inc.*, 819 F.3d 277, 287 (6th Cir. 2016) (quoting S. Rep. 109-14, at 43

(2005)).

16.     "[N]o antiremoval presumption attends cases invoking CAFA, which

Congress enacted to facilitate adjudication of certain class actions in federal court."

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

17.     CAFA extends federal jurisdiction over putative class actions where:

(1) any member of the proposed class is a citizen of a state different from any

defendant (i.e., minimal diversity exists); (2) there are at least 100 members in all

proposed plaintiff classes combined; (3) the amount in controversy exceeds $5

million; and (4) no exception to jurisdiction applies.  *See* 28 U.S.C. §§ 1332(d).

This case satisfies each of these requirements.

### *The Minimal Diversity Requirement Is Satisfied*

18.     A putative class action is removable under CAFA if "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).

19.     T-Mobile is a corporation organized under Delaware law with its principal place of business in Washington.  (*See* Ex. A ¶ 9.)  It is thus a citizen of Delaware and Washington for jurisdictional purposes.  28 U.S.C. § 1332(c)(1).

20.     Plaintiff alleges it is a Michigan state-chartered credit union operating in Wayne County and an alleged class member.  (Ex. A ¶¶ 8, 11, 48.)  Plaintiff is thus a citizen of Michigan based on the allegations in the Complaint.  28 U.S.C. § 1332(d)(10).

21.     The putative class is broadly defined to include "financial institutions" across the country.  (Ex. A ¶ 44(a).)  Class members would thus be chartered and operate in most, if not every, state in the nation based on the allegations in the Complaint.  (*Id.* ¶¶ 46(b)-(c) & nn. 6-7 (citing federal sources).)

22.     As a result, minimal diversity of citizenship exists between a proposed class member and T-Mobile.

### *The Proposed Class Exceeds 100 Members*

23.     This action is a proposed "class action" under 28 U.S.C. § 1332(d)(1)(B), defined as "any civil action filed under Rule 23 of the Federal

Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  (Ex. A ¶¶ 43-45.)

24.     For a class action to be removable under CAFA, "the number of members of all proposed plaintiff classes in the aggregate" must be at least 100. 28 U.S.C. § 1332(5)(B).

25.     Plaintiff seeks to represent a class of "[a]ll financial institutions (as that term is defined by 15 USC 1693a(9)) that paid funds to reimburse their members or customers because of unauthorized electronic fund transfers (as that term is defined by 15 USC 1693a(12)) arising out of T-Mobile making an unauthorized subscriber identity module change."  (Ex. A ¶ 44(a).)

26.     Plaintiff alleges the proposed class likely consists of "thousands of financial institutions."  (Ex. A ¶ 46.)  To support that allegation, Plaintiff identities "4,771 commercial banks and savings institutions insured by the FDIC" and "4,853 federally insured credit unions."  (*Id.*)  Plaintiff alleges joinder of all members of the class would be impracticable.  (*Id.*)  The numerosity threshold for the proposed class is therefore satisfied.

### *The Amount in Controversy Exceeds $5 Million*

27.     Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."  *Dart*, 574 U.S. at 84.

To establish the amount in controversy, a notice of removal "need not contain evidentiary submissions." *Id.*  Rather, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554.

28.     For purposes of removal only, and without conceding that Plaintiff or the putative class is entitled to any damages, remedies, or penalties whatsoever, the aggregated claims of the putative class involve an amount in controversy that exceeds the jurisdictional minimum of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2).

29.     The Complaint seeks damages on behalf of Plaintiff and a class allegedly consisting of thousands of financial institutions.  (Ex. A at 12.)  Plaintiff alleges its individual damages alone total "at least $7,641.00" (*id.* ¶ 41) and that its claims are "typical of the claims of the class" (*id.* ¶ 48).  Even a class of 655 members with damages typical of Plaintiff's—just a fraction of the "thousands" of total members alleged to be in the class—would meet the $5 million threshold. (*Id.* ¶ 46.)

30.     Based on its allegations, the Complaint puts substantially more than $5,000,000 in controversy in this action.  *See Franklin v. CitiMortgage, Inc.*, 2012 U.S. Dist. LEXIS 270, at *12 (S.D. Ohio Jan. 3, 2012) (finding over $5,000,000 in controversy because "if plaintiff's loss [for a data breach chargeback] of over

$11,000 was typical of the putative class members' claims, the class would only need to reach 450 members to exceed CAFA's jurisdictional limit"); *Kendrick v. Standard Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 28461, at *11 (E.D. Ky. Mar. 31, 2007) ("As Defendants note, the named Plaintiffs' alleged damages for erroneously collected premium taxes average $56.04 per year. And given that the proposed class period is approximately five years, this amounts to an average of approximately $280.20 per named Plaintiff over this period.  Since the Amended Complaint alleges that there are tens of thousands of putative class members, a 20,000 member class with this average of damages would result in an aggregate of approximately $5.6 million."); *see also Cowit v. CitiMortgage, Inc.*, 2013 U.S. Dist. LEXIS 4591, at *17 (S.D. Ohio Jan. 11, 2013) ("Courts routinely rely on such basic multiplication [of amount sought by number of entities] to determine whether the aggregate claims of a putative class likely exceed CAFA's threshold.").

31.    To the extent there is any doubt about the amount placed in controversy, the Complaint also seeks attorneys' fees, injunctive relief, interest and costs, a service award, and further relief, which add to the amount in controversy. The Court may properly consider each category in ascertaining the amount in controversy.  *See Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro*, 129 F. App'x 194, 195 (6th Cir. 2005) (declaratory or injunctive relief)

(per curiam); *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 377 (6th Cir. 2007) (fees).

32.     In sum, based on Plaintiff's assertions and theories of recovery, the amount in controversy exceeds $5,000,000.

### *No Exceptions to Jurisdiction Apply*

33.     T-Mobile's Washington and Delaware citizenship precludes the "local controversy" and "home state" exceptions in 28 U.S.C. § 1332(d)(3) & (d)(4), for which Plaintiff would bear the burden of proof in any event.

### T-Mobile Satisfies the Requirements of 28 U.S.C. § 1446

34.     This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1446(a).

35.     This Notice of Removal has been filed within thirty days of service of the Complaint and summons on T-Mobile. *See* 28 U.S.C. § 1446(b)(1).

36.     Concurrently with the filing of this Notice, T-Mobile will give written notice to all adverse parties and will file a copy of this Notice with the clerk in the State Court Action. *See* 28 U.S.C. § 1446(d).

37.     T-Mobile does not waive and expressly preserves all objections, defenses, and exceptions authorized by law, including but not limited to those permitted pursuant to Rule 12 of the Federal Rules of Civil Procedure.

Dated: December 30, 2022                */s/ Robert D. Boley*
                                              Robert D. Boley (P82350)
                                              ARENTFOX SCHIFF LLP
                                              350 S. Main Street, Ste. 210
                                              Ann Arbor, MI 48104
                                              734-222-1557 (Phone)
                                              robert.boley@afslaw.com

                                              *Attorney for Defendant T-Mobile USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 30, 2022, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Michigan, using the electronic case filing system of the court.  I hereby certify that, on December 30, 2022, I also served the foregoing document on Plaintiff's counsel of record by mail and email:

HOLZMAN LAW, PLLC
Charles J. Holzman (P35625)
Michael V. Krempa (P76494)
28366 Franklin Rd.
Southfield, MI 48034
(248) 352-4340
cholzman@holzmanlaw.com
mkrempa@holzmanlaw.com

*Attorneys for Plaintiff*

*/s/ Robert D. Boley*
Robert D. Boley